IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| RICHARD WARREN MCCUISTIAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-cv-279-JA-GMB |
| | ) | [WO] |
| LG ELECTRONICS, U.S.A., INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Pending before the court is the Motion for a Protective Order and an Award of Fees and Costs (Doc. 83) filed by Defendant BRK Brands, Inc. ("BRK"). Plaintiff Richard Warren McCuistian ("McCuistian), who brought suit as administrator of the estate of Anne McCuistian, has filed a response to that motion (Doc. 88), and the court held a telephonic status and scheduling conference regarding the motion on April 25, 2016. Doc. 99. On the basis of the filings and the representations made during the conference, BRK's Motion for a Protective Order and an Award of Fees and Costs is DENIED, as set out below.

### I.    BACKGROUND AND PROCEDURAL HISTORY

This lawsuit arises out of a fire that resulted in the death of Anne McCuistian within her home. Doc. 1 at 6. The core allegation against BRK is that it manufactured or sold a smoke detector/alarm that failed to warn Ms. McCuistian of the fire in time to prevent her death by smoke inhalation. Doc. 1 at 11–13.

An expert witness hired by McCuistian removed the smoke alarm from the home

1

and has stored the device at his facility during the course of the litigation. Doc. 83-1 at 2. At BRK's request, McCuistian agreed to make the smoke alarm available for an inspection on March 14, 2016. Doc. 83-1 at 2.   BRK's counsel forwarded a proposed protocol for the inspection to McCuistian's counsel on February 25, 2016. Doc. 83-1 at 3.   On March 11, 2016, McCuistian's counsel responded with an email stating in part that he requested "an agreement . . . [t]hat all photographs and videos taken during the inspection will be produced within seven days of the inspection." Doc. 88-2.   BRK's counsel refused this request, but ultimately agreed to proceed with the inspection as scheduled, reserving the right to raise BRK's objections to sharing the photographs by filing a motion for protective order. Doc. 88-6.[1]

The inspection did proceed on March 14, 2016, with representatives of all parties present. Doc. 83-1 at 2.   The inspection was destructive in that certain components of the smoke detector had to be removed to determine who manufactured the device and whether the alarm sounded during the fire.[2]   Dr. Lori Streit was hired as a consultant for BRK for

---

[1] BRK argues that the timing of McCuistian's counsel's email—on the last business day before the scheduled inspection—evinces a motive to leverage his control of the smoke alarm and to capitalize on the parties' sunk transportation costs, and that McCuistian has thereby waived his right to obtain the photographs through the discovery process. Doc. 83 at 12.   The court has been unable to find any authority for this position, and BRK has cited none. *See* Doc. 83 at 12.   McCuistian's counsel stated in his response to the motion for protective order that he did not review the protocol until the evening of March 10, 2016; only then noticed that there was not a provision for the sharing of the photographs; and raised the issue with BRK's counsel the next morning. Doc. 88 at 2.   The undersigned has been given no reason to question the veracity of these representations made by an officer of the court.

[2] The proposed protocol contemplates that the inspection will involve destructive activities such as "delayer[ing] to expose all contents" and the disassembly of certain components. *See* Doc. 88-1 at 2.   The parties also confirmed the destructive nature of the inspection during the telephonic status and scheduling conference on April 25, 2016.   The full exchange follows:

> The Court:   There were references in the papers to there having been some sort of destructive testing or disassembly of the alarm, but then there was another reference to it

purposes of this litigation, and she attended the inspection on behalf of BRK. Doc. 83-1 at

4.   Dr. Streit took a series of photographs during the inspection, including some images

using a microscope. Doc. 83-1 at 2–3.   These photographs documented the inspection

process and they do not disclose BRK's trial strategy or defenses.[3]   BRK has not shared

Dr. Streit's photographs with the other parties, and instead filed the pending motion

pursuant to Fed. R. Civ. P. 26(c) to prevent their disclosure unless and until BRK

designates Dr. Streit as a testifying expert witness. Doc. 83-1 at 4.   The defendants' expert

witness designations are due no later than May 20, 2016 (Doc. 98), and BRK has not

designated Dr. Streit as a testifying expert as of this time.

## II.    DISCUSSION

Dr. Streit's photographs fall within the general scope of discovery in that they

depict the allegedly defective smoke alarm and thus bear some relevance to the parties'

claims and defenses. Fed. R. Civ. P. 26(b)(1).   BRK does not dispute this conclusion.

As a result, the photographs must be produced unless BRK can prove that they are work

---

being in the same condition it was in before the inspection.  So was that a destructive
testing of the equipment?
Mr. Hayes:   Yes.  Well it's not equipment, its actually the smoke alarm itself.   And when
we say it was destructive, what it was . . . was the alarm was badly damaged in the fire to
the point that you certainly couldn't—without trying to clean it and open it—you could not
determine the identifying information which is really relevant: one, when was it produced
and what model alarm it was; and then also you couldn't . . . we undertook sonic
deposition, which is to try to see if the alarm sounded, and you had to open up the alarm in
order to get access because of the amount of damage it sustained.

[3]  The nature of the photographs was also a topic of discussion during the telephonic conference on April 25,
2016:

The Court:   Ms. Flax or Mr. Hayes, is there any claim that these photos disclose your trial
strategy or the defenses you're anticipating at trial, or are these just documenting the
circumstances as they were found during that inspection?
Mr. Hayes:  I don't know that they would disclose trial strategy, but they are highly
technical, or they're obtained in a highly technical manner, with camera equipment that can
be used through a microscope . . . so there's microscopic images of the product.

product. *E.g., Carnes v. Crete Carrier Corp.*, 244 F.R.D. 694, 698 (N.D. Ga. 2007) ("A party asserting work product protection 'must show that the materials withheld are: 1) documents and tangible things; 2) prepared in anticipation of litigation or for trial; and, 3) the documents or tangible things were prepared by or for the party or the attorney asserting the privilege.'") (quoting *Garcia v. City of El Centro*, 214 F.R.D. 587, 591 (S.D. Cal. 2003)).   After careful consideration, the court holds that BRK has not carried that burden.

Rule 26(b)(3) is a codification of the work-product doctrine derived from *Hickman v. Taylor*, 329 U.S. 495 (1946), and applies to materials prepared "by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3).   This list omits any reference to an "expert," and

> each of the six listed examples connotes someone acting in either an agency or fiduciary capacity for the "party or its representative."   Clearly, agents of a party or its representative, who stand in the legal shoes of the party, are entitled to the same work-product protections as the party itself.   No showing has been made that an expert would have capacity to act on behalf of a party in this case.

*In re Application for Republic of Ecuador*, 735 F.3d 1179, 1184 (10th Cir. 2013) (citing *United States v. Nobles*, 422 U.S. 225, 238–39 (1975)) ("It is therefore necessary that the [work-product] doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.").   The first question before the court is whether Rule 26(b)(3) nevertheless covers materials prepared by non-testifying experts.

The Eleventh Circuit considered the closely analogous question of whether Rule

4

26(b)(3) applies to testifying experts in *Republic of Ecuador v. Hinchee*, 741 F.3d 1185, 1190 (2013).   In holding that Rule 26(b)(3) does not apply in that context, the court noted the absence of any reference to an "expert" in Rule 26(b)(3) despite the term's inclusion in Rule 26(b)(4), the 1970 Advisory Committee's "'reject[ion] as ill-considered the decisions which have sought to bring expert information within the work-product doctrine,'" and the redundancy Rule 26(b)(4) injects into the work-product scheme if Rule 26(b)(3) covers "all testifying expert materials in general." *Id.* at 1190–92.   The Eleventh Circuit also noted that the primary purpose for the work-product doctrine—"'shelter[ing] the mental processes of the attorney'"—breaks down when this protection is extended to expert witnesses, whose "role is to provide independent, impartial, qualified opinion testimony helpful to the trier of fact." *Id.* at 1192 (quoting *Nobles*, 422 U.S. at 227).

This court finds that the Eleventh Circuit's rationale for reading Rule 26(b)(3) to exclude testifying experts from blanket work-product protection applies with equal force to non-testifying experts such as Dr. Streit.[4]   The Federal Rules of Civil Procedure plainly contemplate the existence of both testifying experts, *see* Fed. R. Civ. P. 26(b)(4)(A), and non-testifying experts, *see* Fed. R. Civ. P. 26(b)(4)(D), but Rule 26(b)(3)

---

[4] Consistent with the definition for non-testifying experts set forth in Rule 26(b)(4)(D), Dr. Streit has been engaged by BRK specifically for assistance with this litigation, but has not been designated as a trial witness.   Of course, Dr. Streit may ultimately become a testifying expert, if designated by BRK, at which time the discovery of any materials in her possession will fall squarely within the ambit of *Republic of Ecuador* and Fed. R. Civ. P. 26(a)(2) and 26(b)(4)(C).   In the meantime, there is no basis for a finding that she is BRK's "attorney, consultant, surety, indemnitor, insurer, or agent," Fed. R. Civ. P. 26(b)(3)(A), and "no showing has been made that [Dr. Streit] would have capacity to act on behalf of [BRK]." *In re Application for Republic of Ecuador*, 735 F.3d at 1184.

makes no reference to either category.   The provisions of Rule 26(b)(4)(D) extending work-product protection only to facts and opinions of non-testifying experts are just as inconsistent with an expansive interpretation of Rule 26(b)(3) as are the testifying expert provisions of Rule 26(b)(4)(C).   This conclusion is buttressed by BRK's admission that the photographs at issue do not disclose its trial strategy or defenses, further eroding any reliance on a doctrine intended to safeguard an attorney's "mental impressions, conclusions, opinions, or legal theories." Fed. R. Civ. P. 26(b)(3)(B); *see also Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1422 (11th Cir. 1994), *opinion modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994).

Rule 26(b)(3)'s inapplicability does not end the court's analysis, as BRK also relies on Rule 26(b)(4)(D):

> Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial.   But a party may do so only:
> > (i) as provided in Rule 35(b); or
> > (ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

Fed. R. Civ. P. 26(b)(4)(D).   While this protection extends to Dr. Streit as a non-testifying expert witness, Rule 26(b)(4)(D) does not prohibit the discovery of her photographs.   This is because the court has found no authority in this Circuit for the

proposition that a request for production of documents and things[5] that do not disclose opinions or trial strategy is equivalent to a Rule 26(b)(4)(D) request for "facts known or opinions held" by an expert witness through "interrogatories or deposition."   With no binding authority directly on point, the undersigned declines to adopt this new rule of law for the reasons stated below.

There is limited authority for this position even outside of the Eleventh Circuit. BRK directs the court to *U.S. Inspection Servs., Inc. v. NL Eng'd Sols., LLC*, 268 F.R.D. 614, 617 n.3 (N.D. Cal. 2010), which points to *Plymovent Corp. v. Air Tech. Sols., Inc.*, 243 F.R.D. 139 (D.N.J. 2007), for the holding that district courts should ignore Rule 26(b)(4)(D)'s "interrogatories or deposition" language to prevent "an end run around the policies of the rule." *Id.* at 144.   Despite an appreciation for the pragmatism of these rulings, this court is not willing to set aside the plain language of Rule 26(b)(4)(D) purely for policy reasons, particularly when the Eleventh Circuit has so recently cautioned lower courts to avoid constructions that render superfluous any portion of this very rule. *See Republic of Ecuador*, 741 F.3d at 1191 (citing *United States v. Aldrich*, 566 F.3d 976, 978 (11th Cir. 2009); *Bouchard Transp. Co. v. Updegraff*, 147 F.3d 1344, 1351 (11th Cir.

---

[5] As noted above, McCuistian requested the photographs by email, rather than by propounding a Request for Production strictly in the form contemplated by Rule 34. *See* Fed. R. Civ. P. 34(b)(1) (setting out the required contents of a Rule 34 request).   Even so, BRK has treated the email as a valid Rule 34 request, as evidenced by its filing of the pending motion for a protective order.   For present purposes, the substance of the email and the parties' treatment of it compel the court to accept it as a Rule 34 request for documents or things even if it may not satisfy the technical requirements of Rule 34.   Perhaps more to the point, by any reasonable interpretation the email is not a deposition request or an interrogatory pursuant to Fed. R. Civ. P. 33.

1998)).[6]

Rule 26(b)(4) extends work-product protection only to limited classes of expert witness information. *See, e.g., Republic of Ecuador*, 471 F.3d at 1190–91. Even assuming McCuistian's request for the photographs reaches "facts known or opinions held" by Dr. Streit, it was not made through "interrogatories or deposition." Fed. R. Civ. P. 26(b)(4)(D). As a result, the request does not fall within one of the categories described in the rule, and this court will not disregard the rule's plain language simply because certain policy arguments favor the protection of other materials. The fact that these photographs run no risk of disclosing trial strategy underscores this holding. As with Rule 26(b)(3), an expansive reading of Rule 26(b)(4)(D) implicates countervailing policy concerns by expanding the work-product doctrine to documents with more attenuated connections to the attorney's mental impressions. *See, e.g.*, *id.* at 1192 (noting this "core" purpose). It is true that the 1993 Advisory Committee did not explain its rationale for the "interrogatories or deposition" limitation in Rule 26(b)(4)(D). *See* Fed. R. Civ. P. 26(b), Advisory Comm. Note (1993) (discussing amendments to Rule 26(b)(4) without mentioning this language); *Hartford Fire Ins. Co. v. Pure Air Lake Ltd. P'ship*, 154 F.R.D. 202, 206 (N.D. Ind. 1993) (noting the 1993 amendment while reserving ruling on its meaning because of overlapping interrogatories). Yet the contours of the

---

[6] In independent research, this court found one case in which a lower court within the Eleventh Circuit assumed, without deciding, that Rule 24(b)(4)(D) could cover document requests, but that opinion pre-dated *Republic of Ecuador* and apparently the parties did not raise the "interrogatories or deposition" limitation. *See U.S. ex rel. Civil Const. Techs., Inc. v. Hanover Ins. Co.*, 2013 WL 1810817, at *2–*4 (M.D. Fla. 2013) (overruling a Rule 26(b)(4)(D) objection to a third-party subpoena seeking the deposition of a non-testifying expert and ten categories of documents without addressing the "interrogatories or deposition" limitation).

work-product doctrine have always been defined by the form of the requested information. *See, e.g.*, Fed. R. Civ. P. 26(b)(3)(A) (protecting only "documents and tangible things"). Even the 1970 Advisory Committee, who first recommended codification of the work-product doctrine, cautioned that "[n]o change is made in the existing doctrine, noted in the *Hickman* case, that one party may discover relevant facts known or available to the other party, even though such facts are contained in a document which is not itself discoverable." Fed. R. Civ. P. 26(b)(3), Advisory Comm. Note (1970); *see Joyner v. Cont'l Ins. Cos.*, 101 F.R.D. 414, 415 (S.D. Ga. 1983) ("Rule 26(b)(3) was adopted in 1970 to codify the holding in *Hickman* . . . ."). The court finds no basis to break with precedent by reading out of Rule 26(b)(4)(D) the very same distinction. For these reasons, the court holds that BRK has not carried its burden of proving that Rule 26(b)(4)(D) prohibits the production of Dr. Streit's photographs of the allegedly defective smoke alarm.[7]

## III.   CONCLUSION

Accordingly, it is ORDERED that BRK's Motion for a Protective Order and an Award of Fees and Costs (Doc. 83) is hereby DENIED, as further set out above. Within seven (7) days of this Order, BRK is ORDERED to produce to the remaining parties all

---

[7] Although not essential to the resolution of the pending motion, the court would have found exceptional circumstances justifying production of the photographs even if Rule 24(b)(4)(D) covered them. This is because McCuistian cannot now obtain comparable documentation of the condition of the smoke detector following the parties' destructive testing. However, McCuistian certainly had the opportunity to take microscopic photographs either before or during the destructive testing. While the court would have ordered the production to prevent information asymmetry and the type of surprise at trial the discovery rules are designed to avoid, it would have ordered McCuistian to absorb half of BRK's costs in obtaining the photographs. Because the court instead finds that Rule 24(b)(4)(D)'s protections do not attach to the subject photographs, it is without a basis upon which to shift BRK's costs.

photographs in its custody or control that were taken during the March 14, 2016 inspection.

DONE this 27th day of April, 2016.

/s/ Gray M. Borden
UNITED STATES MAGISTRATE JUDGE